## McCARTHY v. STATE.

### (*Nashville.*   January 20, 1891.)

1. CONTEMPT OF COURT.   *Preventing attendance of witness.*

   To prevent, or to attempt to prevent, the attendance upon a Court of this State of a legally summoned witness, by intimidation or other improper means, is such "unlawful interference with the process or proceedings of the Court" as constitutes a contempt, even when done by a person not a party to the cause in which the witness was required to attend.

   Code construed: §4881 (M. & V.); §4106 (T. & S.).

2. SAME.   *Same.   Punishment here, though acts were done outside State.*

   And Courts of this State have jurisdiction to punish such unlawful interference with their process, although the acts constituting the contempt were done outside the State for the purpose of inducing a non-resident witness to disobey a lawful summons to attend upon a Court in this State.

3. SAME.   *Power of Criminal Courts to punish.*

   Criminal Courts possess the same power as Circuit Courts to punish for contempt, and may therefore impose fine not exceeding ten dollars and imprisonment not exceeding six months, for such offense.

   Code construed: §4882 (M. & V.); §4107 (T. &.S.).

---

### FROM   DAVIDSON.

---

Appeal in error from Criminal Court of Davidson County.  JOHN A. FITE, J., sitting by interchange.

McCarthy *v.* State.

QUARLES & TURLEY for McCarthy.

Attorney-general PICKLE for State.

TURNEY, Ch. J.   Armlee, and Depew were indicted for larceny and obtaining money under false pretenses.  William Lodge, who lived in Alabama, was prosecutor.  He had been summoned and also recognized to appear at the trial.  McCarthy, with others, went to the home of Lodge and proposed to compromise the case, and told him if he came to Nashville he would get nothing; that it would not be safe for him to come—made him believe he would have no protection if he came—and paid the sixty dollars stolen.

The Judge of the Criminal Court, after arraignment, plea, and proof, fined McCarthy fifty dollars and imprisoned him ten days for contempt of Court.  There is no error in this.  It is a power inherent in all Courts of Record to enforce their orders, judgments, and decrees, and the execution of their process, as well as to prevent all interference with the carrying out of the same.

The prosecutor, Lodge, was so far within the jurisdiction of the Court as that forfeiture could have been taken against him for failing to appear. He was legally bound to appear and give evidence. McCarthy interfered, and, by exciting his fears, prevented him from doing so.

Section 4881 of the (M. & V.) Code is directly in point.  It makes the "abuse of, or unlawful

McCarthy v. State.

interference with, the process or proceedings of the Court" a contempt of Court.

Section 4882—which provides: "The punishment for contempt may be by fine or imprisonment, or both; but, when not otherwise specially provided, the Chancery, Circuit, and Supreme Courts are limited to a fine of fifty dollars and not exceeding ten 'days' imprisonment, and other Courts are limited to a fine of ten dollars"—does not limit the Criminal Court to a mere fine of ten dollars. It was certainly the intention of the Legislature to include in the terms "Circuit, Chancery, and Supreme Courts" all Courts of Record exercising a general jurisdiction. The Judges of the Circuit, Criminal, and Chancery Courts are authorized to interchange ridings throughout the State, and thereby to exercise the jurisdiction conferred upon each. In several instances the Circuit and Criminal Courts are united, and in a very large majority of instances the Circuit Court has exclusive jurisdiction over criminal causes, there being but few exclusively Criminal Courts in the State.

When we consider the character of the Courts in the State, we conclude a Criminal Court is, to all intents, a Circuit Court, and we are not permitted to isolate the few strictly Criminal Courts, and declare they have less power to maintain their respectability, safety, and existence than have the many Circuit Courts clothed with a mixed civil and criminal jurisdiction. Criminal Courts were only established in the most densely populated

35—5 P

parts of the State, and for the relief of the Circuit Courts. Their establishment was a carrying off from one jurisdiction and a transfer to another. The transfer carried with it the jurisdiction attached at the time it was made.

If the rule contended for prevailed, it would create the awkward anomaly of a Judge having the power in one department of his duties to punish in one way for contempt, and in another department in a different and ineffective way. He might fine fifty dollars and imprison in civil causes for comparatively slight offenses, and fine only ten dollars for the most aggravated contempt in criminal cases.

The enforcement of the criminal laws is more important to society than that of the civil. The Legislature has always so regarded it, as is seen by reference to the statutes, and we may not infer it meant to cripple their administration.

In the case before us we have a Circuit Judge on interchange with a Judge of a Criminal Court.

If the offense had been committed in Judge Fite's circuit, there could be no question of his authority to inflict the punishment he has proposed to inflict in Nashville; or, if while Judge Ridley was on Judge Fite's circuit a like offense had occurred, there would be no doubt of his power to so punish.

We are unable to see why or by what process the interchange has lost jurisdiction to the one and conferred it upon the other.

Judgment affirmed.